70 F.3d 115
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Debbie PERSINGER, Plaintiff-Appellant,
v.
OHIO DEPARTMENT OF NATURAL RESOURCES, Defendant-Appellee.
 No. 94-4251.
 United States Court of Appeals, Sixth Circuit.
 Nov. 15, 1995.
 
 Before: MARTIN and BATCHELDER, Circuit Judges, and EDMUNDS, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant Debbie Persinger appeals the district court's award of summary judgment in favor of the Ohio Department of Natural Resources on her claim brought under Title VII of the Civil Rights Act of 1964. Persinger alleged that ODNR engaged in unlawful, sexually discriminatory employment practices when it terminated her employment in March of 1992. In its order awarding summary judgment in favor of ODNR, the district court found that Persinger had not established the required prima facie case of discrimination because there was no evidence of gender bias related to Persinger's termination and she was not replaced by a male. Accordingly, the district court found summary judgment to be appropriate. Because we agree that no genuine issue of material fact existed and that Persinger failed to establish a prima facie case of employment discrimination, we AFFIRM the district court's award of summary judgment.
 
 
 2
 On January 19, 1988, ODNR hired Persinger as a corps member in the Division of Civilian Conservation. The purpose of the division is to provide "work experience related to the conservation, development, and management of natural resources" and corps members are limited to twelve months of participation in the program. Corps "Leaders," may participate in the program for up to eighteen months. Persinger attained Corps Leader status and participated in the program for the maximum eighteen month period.
 
 
 3
 After her participation in the conservation program ended, ODNR hired Persinger as a "Project Supervisor" in the Columbus, Ohio, camp in July of 1989. The position of Project Supervisor was exempt from the collective bargaining agreement and was in the classified civil service. Project Supervisors managed crews of corps members working on various conservation projects. Two men, Terry Umeck and Bill Thomas, were also Project Supervisors at the Columbus camp and Persinger was the least senior of the three. The staff also included Mick Micacchion, the Camp Manager, and Cindy Peoples, the Camp Secretary.
 
 
 4
 In July of 1991, Persinger injured her knee while working on a project and she took leave due to the injury in late August. Persinger was awarded worker's compensation through December 28, 1991, but returned to light duty work at the camp on November 13.
 
 
 5
 While on leave, Persinger became pregnant. Persinger told her friend and fellow staff member, Cindy Peoples, of the pregnancy some time in November. She did not tell anyone else about the pregnancy until January of 1992, when she told Camp Manager Mick Micacchion. In February, Persinger was told that she was being laid-off. On March 11, she received a written notice of her impending lay-off, effective March 28.
 
 
 6
 In May of 1992, Mick Micacchion resigned as Camp Manager of the Columbus Camp and Terry Umeck took a compensatory time leave. To make up for the resulting personnel shortage at the camp, Andrew Seiling was hired as a full-time temporary "Natural Resources Specialist" to help complete several projects for the Columbus Camp. Seiling was hired on May 17, 1992 and stopped working on October 3, 1992. Finally, although job openings for the position of Crew Leader came available during 1992, ODNR did not notify Persinger of these slots because the position of Crew Leader was not the same as the position of Project Supervisor, Persinger's former position.
 
 
 7
 While these events were taking place at the Columbus Camp, several administrative and fiscal decisions were taking place at the state level. In 1990, the Ohio Department of Administrative Services concluded that the position of Project Supervisor was not truly supervisory and created the position of Crew Leader. A Crew Leader fulfilled the same duties as a Project Supervisor but was non-exempt and governed by the collective bargaining agreement, contrary to the Project Supervisors' status. In addition, the Ohio General Assembly passed a law which required Project Supervisors and Crew Leaders to possess a commercial driver's license as part of their job description. Current employees were "grandfathered" in, but were required to obtain a commercial driver's license by June 30, 1992. Persinger had not obtained a commercial driver's license at the time she was terminated in March of 1992.
 
 
 8
 In 1991, pursuant to Governor George Voinovich's cost-cutting directives, ODNR director Frances Buchholzer asked Jeff Wilson, the Acting Chief of the Division of Civilian Conservation, to submit recommendations on how to make the division more economical and efficient. During this time, the Ohio fiscal budget was prepared for fiscal year 1992, and the Division of Civilian Conservation received several hundred thousand dollars less than the total dollar amount needed to operate at the existing level.
 
 
 9
 Jeff Wilson's initial recommendations for reorganization were designed to affect all "camps" equally. In four of the six non-residential camps in Ohio, including the Columbus camp, the least senior Project Supervisor was slated for termination because those camps had more than two Project Supervisors or Crew Leaders. Persinger's position was one of those slated for abolishment. Three drafts of the reorganization were prepared in September and December of 1991, and January of 1992, respectively. Persinger's position was slated for termination in all three drafts. Don Brode, the new Chief of the Division of Civilian Conservation, submitted the final January draft for approval. Brode did not have information regarding names or genders of the persons scheduled for termination, only the position control numbers for each position. Of the positions recommended for termination statewide, five were Project Supervisors or Crew Leaders and Persinger was the only female in the group.
 
 
 10
 The March 1992 reorganization resulted in eight full time employees of the Division of Civilian Conservation being laid-off, five of whom were men. In October, the division terminated twenty-three more positions, seventeen of which were held by men. In sum, of the thirty-one positions abolished by the division in 1992, only nine were held by female employees. Persinger, of course, was one of the nine females terminated in 1992 by the Division of Civilian Conservation.
 
 
 11
 Persinger first argues that the "new era" standard for summary judgment does not apply to an employment discrimination claim in which the plaintiff asks for a jury. We disagree. The district court applied the proper summary judgment standard in this case. The fact that Persinger's claim is one for employment discrimination and that she has requested a jury has no bearing on the standard for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 326-27 (1986); Anderson v. Liberty Lobby Corp., 477 U.S. 242, 247 (1986); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476-81 (6th Cir.1989) (discussing the effect of the Supreme Court's "new era" in summary judgments).
 
 
 12
 Under 42 U.S.C. Sec. 2000e-2(a)(1) (1988), an individual may establish a prima facie case of discrimination by demonstrating that: 1) she is in the protected class; 2) she was qualified for the work; 3) she suffered an adverse employment action; and 4) she was replaced by a person not in the protected class. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Alternatively, a party may establish a prima facie case of discrimination by offering direct evidence of intentional discrimination by the employer. Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir.1988); Blalock v. Metals Trades, Inc., 775 F.2d 703, 707 (6th Cir.1985), appeal after remand, 883 F.2d 1011 (1987), cert. denied, 490 U.S. 1064 (1989).
 
 
 13
 Persinger argues that the district court improperly construed the evidence against her in determining whether summary judgment was appropriate. We disagree. We find no error in either the district court's analysis of the evidence presented by both parties on ODNR's summary judgment motion, or in its application of the law. The district court judge thoughtfully and carefully reviewed all of the appropriate materials and properly awarded summary judgment in favor of ODNR.
 
 
 14
 Accordingly, we AFFIRM based on the opinion and reasoning of the district court.
 
 
 
 *
 The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation